IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **CODY BEAVERS,** individually and on behalf of similarly situated persons,<br><br>Plaintiff,<br><br>v.<br><br>**CAHABA HEIGHTS PLAZA, LLC, UNITED PIZZA, INC.,** and **MOHAMMED (DAVID) DAWOUD,**<br><br>Defendants. | **Case No.:** Case No.: 2:22-CV-00890-NAD<br><br>**Collective Action Representation**<br><br>**Jury Demanded** |

### JOINT MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT AND CONDITIONAL CERTIFICATION OF AN FLSA COLLECTIVE ACTION FOR SETTLEMENT PURPOSES ONLY AND APPROVAL OF PLAINTIFF'S REQUEST FOR ATTORNEY'S FEES AND SERVICE AWARDS

Plaintiff, CODY BEAVERS ("Plaintiff"), on his own behalf and on behalf of all individuals similarly situated, and Defendants, CAHABA HEIGHTS PLAZA, LLC, UNITED PIZZA, INC., and MOHAMMED (DAVID) DAWOUD ("Defendants") (together, "the Parties") jointly move for approval of the parties' Confidential Settlement Agreement[1] attached as Exhibit "A" and for conditional certification of an FLSA collective action for settlement purposes only. Plaintiff also moves for an award of attorney's fees and service awards.[2] In support of this Joint Motion, the Parties file the following memorandum of law.

---

[1] The Parties have agreed to maintain the confidentiality of the settlement but, to facilitate timely and efficient Court review and approval, are not seeking to file the Settlement Agreement under seal.

[2] Defendant does not oppose Plaintiff's request for attorney's fees as set forth in this Motion, but it does not join in the request.

I.

Introduction

Plaintiff alleges that Defendants violated the Fair Labor Standards Act, 29 U.S.C.§§201, *et seq*. ("FLSA") by failing to pay him and other delivery drivers sufficient expense reimbursements for the use of their vehicles in delivering pizzas and other items on Defendants' behalf. Plaintiff claims that him and all delivery drivers who worked for Defendants during the Release Period, as that term is defined in the Settlement Agreement, were not paid all appropriate minimum wages as a result of the alleged under-reimbursement. Defendants, in turn, maintain that they properly paid all its delivery drivers, including Plaintiff, sufficient expense reimbursement such that the alleged minimum wage violations did not occur. As a result, Defendants maintain that they have not violated the FLSA or any other law and are not liable in any manner to Plaintiff or to the putative class. In addition, were the case to be litigated, Defendants would also raise other factual and legal defenses to Plaintiff's FLSA claims, as well as contesting whether the case was appropriate to be certified as a collective action.

Plaintiff originally filed his putative Collective Action Complaint on February 25, 2021. *See Beavers v. Cahaba Heights Plaza, LLC, et al.*, Case No.: 2:21-cv-00304-AMM, D.E. 1 (N.D. Al.).[3] The Parties engaged in months of discussions regarding potential resolution and then agreed to dismiss the case, without prejudice, and toll the statute of limitations for Plaintiff, Cody Beavers, and Opt-In Plaintiffs, Dakota Shawn Jolly and Teela Holley, while the parties worked towards a class mediation. Following dismissal and in advance of mediation the Parties exchanged detailed information of the class' collective deliveries, miles driven, and reimbursement paid, and other requested information. The parties then engaged in mediation

---

[3] Cahaba Heights Plaza, Inc. was incorrectly named as the corporate defendant in the original lawsuit. It is included as a party to the Settlement Agreement.

before an experienced mediator, Kay Wolf, Esq., who has served as mediator in numerous other similar delivery driver class and collective actions. As a result of this mediation, the Parties arrived at a final settlement. All of the Parties believe that the terms of the proposed settlement, which are summarized below, are fair and should be approved. The settlement grants relief for the Plaintiff and the class, provides an appropriately limited release in favor of the Defendants, and the total settlement amount is properly discounted to account for the Plaintiff's probability of success and Defendants' alleged defenses.

In this memorandum, the Parties summarize the significant terms of their agreement; describe the procedure for approval of a collective action settlement and the legal principles governing the approval of a settlement in a collective action; and apply these principles to show why this proposed settlement is fair and reasonable, and should be approved.

II.

A. Summary of the Settlement Agreement

Under the Settlement Agreement, the Parties seek to certify a collective action for settlement purposes under the FLSA and send notice to all persons who worked at the Domino's pizza stores in Dora, Alabama, or Hamilton, Alabama (store nos. 5395 and 5822) as delivery drivers at any time from April 15, 2019, through the date this Court approves the settlement in this action; pay settlement awards to all members of the Settlement Collective who opt to join this lawsuit; provide releases in favor of Defendants limited to claims raised or that follow directly from the allegations raised in this case; allow Plaintiff's counsel to seek approval of attorneys' fees and costs up to an agreed limit; and allow Plaintiff and certain other individuals who aided Plaintiff's counsel in the investigation and prosecution of the claims raised in the Lawsuit to seek limited service awards.

B. <u>Conditional certification for settlement purposes</u>

The parties ask the Court to conditionally certify for settlement purposes only a collective action pursuant to Section 216(b) of the FLSA. The group who would be provided notice and an opportunity to join this lawsuit is composed of: all persons who worked at the Domino's pizza stores in Dora, Alabama, or Hamilton, Alabama (store nos. 5395 and 5822) as delivery drivers at any time from April 15, 2019, through the date this Court approves the settlement in this action ("Settlement Collective" or "Settlement Collective Members"). The conditional certification of a collective action under the FLSA for settlement purposes would allow the parties to send a Court-approved notice to all Settlement Collective Members. (The parties are attaching the proposed Notice as Exhibit "A" to the attached Settlement Agreement.) Along with the Court-approved notice, Settlement Collective Members will receive a Claim Form. (The parties are attaching a copy of the proposed Claim Form as Exhibit "A" to the attached Settlement Agreement.) The Notice and the Claim Form explain that by executing and returning the Claim Form as instructed, the individual is agreeing to join the Lawsuit and participate in the settlement. Those individuals who return the Claim Form timely agree to join this lawsuit and would be part of the settlement. As the parties explain in more detail below, there are no due process concerns because, under the opt-in FLSA settlement process, only those individuals who affirmatively agree to join the lawsuit would be bound by the settlement. If a Settlement Collective Member chooses not to join this lawsuit by returning a Claim Form, then that individual loses no rights and is free to pursue his or her individual claim, if desired, as he or she sees fit. Unlike a class action, where there are absent class members and a class member may lose rights unless they opt-out, in a collective action such as this case, individuals forfeit no rights unless they voluntarily choose to be part of the lawsuit.

C. <u>Amount of the settlement</u>

    i.   <u>Amount of fund and individual awards</u>

Defendants have agreed to pay a maximum settlement of One Hundred Fifty Thousand ($150,000.00) (defined in the Settlement Agreement as the "Maximum Settlement Amount"). Out of the Maximum Settlement Amount, Defendants agree to pay all payments to members of the Settlement Collective who opt-in to this settlement; service awards to Plaintiff, Cody Beavers, and Opt-In Plaintiffs, Dakota Shawn Jolley and Teela Holley (together "Representative Plaintiffs"); costs of settlement administration; and attorneys' fees, costs, and expenses.

Each Settlement Collective Member's Settlement Payment will be calculated in the following manner:

- For each Settlement Collective Member, the total number of his or her recorded miles making deliveries for Defendants during the Release Period shall be his/her "Individual Miles." The aggregate of all Individual Miles among all Settlement Collective Members shall be the "Collective's Miles."

- Each Settlement Collective Member's Individual Miles shall be divided by the Collective's Miles to obtain his/her "Payment Ratio."

- Each Settlement Collective Member's Payment Ratio shall be multiplied by the Net Settlement Amount (as defined in the Settlement Agreement) to arrive at his/her Settlement Payment, which shall be a minimum of $30.00.

Each Settlement Collective Member will be advised in the Notice of the terms of the Settlement Agreement and their options with regard to participating in the settlement. Each Settlement Collective Member can then decide whether to voluntarily join the settlement. Settlement Collective Members release claims only if they decide to voluntarily join the settlement.

5

Defendants shall not be obligated to pay any Settlement Payments to a Settlement Collective Member unless they satisfy the terms of this Settlement, specifically the timely and proper delivery of a signed FLSA Opt-in Form and Release of Claims and W-9.

      ii.    <u>Attorneys' fees, costs, and service awards</u>

In addition to the money that is allocated to pay the Settlement Collective Members, Defendants do not oppose Plaintiff's request for an award of attorneys' fees and reimbursement of expenses up to a maximum of 33.3% of the Maximum Settlement Amount ($50,000.00). Defendants will not oppose Plaintiff's Counsel's request for approval of service awards of Two Thousand Five Hundred Dollars ($2,500.00) to the named Plaintiff, Cody Beavers, and Five Hundred Dollars ($500.00) to each of the opt-in Plaintiffs, Dakota Shawn Jolly and Teela Holley. These service awards are in recognition of the time and effort spent aiding in the investigation and development of the claims asserted by Plaintiff. If approved, the service awards will be paid from the Maximum Settlement Amount, but will be in addition to each of the individual settlement shares otherwise being apportioned to each of the Representative Plaintiffs.

D. <u>Releases</u>

If the Settlement Agreement is approved, all Opt-In Plaintiffs (that is, all individuals who voluntarily choose to accept this settlement) will release all claims that relate to the alleged under-reimbursement of expenses, including claims for failure to pay minimum wages under the FLSA and under applicable state wage and hour laws. Because this is a settlement agreement under the FLSA, and the parties are not asking for a settlement under Rule 23, there are no absent class members. Consequently, only those individuals who actually consent to join the lawsuit by endorsing and cashing their checks will release any claim.

III.

A.  Procedure and Governing Law for Approval of Settlement Agreement

  i.  Procedural considerations

FLSA collective action settlement agreements require judicial approval. *Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350 (11th Cir. 1982). Because the settlement of a FLSA claim has no binding effect on absent class members—it only binds the potential class members who affirmatively opt-in—approval of the Settlement Agreement is governed by FLSA procedures, not the procedure prescribed for class actions. *See Calderone v. Scott*, 838 F.3d 1101, 1102 (11th Cir. 2016) ("The FLSA's § 216(b) requires plaintiffs to 'opt in' to be considered class members. In contrast, a Rule 23(b)(3) class action requires plaintiffs to 'opt out' if they do not wish to be bound by the court's judgment.")

  ii.  Considerations for approval

When asked to review and approve the terms of settlement under the FLSA, there is a "strong presumption" in favor of approval. *Hamilton v. Frito-Lay, Inc.*, No. 605-CV-592-ORL-22JGG, 2007 WL 328792, at *2 (M.D. Fla. Jan. 8, 2007), report and recommendation adopted, No. 6:05CV-592ORL-22JGG, 2007 WL 219981 (M.D. Fla. Jan. 26, 2007). This is particularly true when, as here, the parties are represented by experienced counsel. Indeed, absent fraud and collusion, the court may not only rely on the judgment of experienced counsel, but "should be hesitant to substitute its own judgment for that of counsel." *Diaz v. Hillsborough Cty. Hosp. Auth.*, No. 8:90-CV-120-T-25B, 2000 WL 1682918, at *4 (M.D. Fla. Aug. 7, 2000) (quoting *Cotton v. Hinton*, 559 F. 2d 1326, 1330 (5th Cir. 1977)). The settlement in this case was finalized after the parties engaged in protracted negotiations, mediated before an experienced, nationally-recognized employment law mediator, and then continued protracted negotiations

even after mediation. As the parties explain in more detail below, this Settlement Agreement is fair and reasonable, and should be approved.

IV.

A.  <u>Agreement Is Fair and Reasonable</u>

The Court should approve the Settlement Agreement because it is fair and reasonable. The settlement was negotiated at arm's-length by experienced counsel; the amount Defendants have agreed to pay the Settlement Collective Members is fair and adequate; there is a significant risk to the Plaintiff Class of an adverse judgment on the merits or whether the case should proceed as a collective action; the Plaintiff Class will receive adequate notice sufficient for each potential opt-in to assess his or her rights; the members of the Plaintiff Class are sufficiently similar for *conditional* certification for settlement purposes; and the amount of fees, costs and service awards requested are in line with sums previously awarded in similar cases. This settlement is particularly fair and reasonable because, unlike a *class* action settlement, only those individuals who voluntarily choose to become part of the lawsuit, and thus to participate in the settlement, are bound by it. As the parties explain more fully below, any Settlement Collective Member who thinks the settlement is unfair is not obligated to participate in the settlement and is not bound by it.

B.  <u>Settlement is the product of arm's length negotiations and of a bona fide dispute</u>

The settlement in this case was reached after counsel for the parties had engaged in a day-long mediation and prior lengthy negotiations. It is the opinion of counsel for both parties that the settlement is fair, adequate, and reasonable. As courts have repeatedly held, the Court should defer to the judgment of counsel unless there is evidence of collusion. *See Weldon v. Backwoods Steakhouse, Inc.*, No. 6:14-CV-79-ORL-37TBS, 2014 WL 4385593, at *3 (M.D. Fla. Sept. 4,

2014) ("Short of a trial, the Court is not in as good a position as the parties to determine the reasonableness of the settlement."). Here, the bona fide disputes in this matter include the following:

- whether Defendants paid an appropriate reimbursement rate for the deliveries made by Settlement Collective Members;

- if Plaintiff proves the reimbursement was insufficient, what is the appropriate reimbursement rate that should have been paid;

- whether class certification was appropriate or warranted if contested in an adversarial setting;

- whether a third year of damages was available under the FLSA for a "willful" violation; and

- whether liquidated damages are appropriate under the FLSA.

C.  Amount to the class is fair

Not only is the settlement the product of an adversarial, non-collusive process, but the amount to be paid to the Settlement Collective is fair and reasonable. Plaintiff's counsel estimates that the settlement here will pay Settlement Collective Members approximately 40% more than what they already received as a reimbursement (after accounting for payments of service awards, attorneys' fees and costs, and costs of administration). This is significant relief which puts additional reimbursement money into each Settlement Collective Member's pocket who chooses to join this settlement.

As explained in the Settlement Agreement, the amount going to each Settlement Collective Member was determined by Plaintiff's counsel applying a formula that took into consideration the number of miles driven by each class member and the amount of

reimbursement already received during the Release Period. A delivery driver who drove more miles for Defendants during this period will be allocated a proportionally higher share of the settlement than one who drove fewer miles during the period.

These distribution methods are described in the Settlement Agreement and in the Notice that would be sent to each potential Collective Member. Only those who voluntarily agree to join the settlement would be bound by it. As stated in the Notice, any Settlement Collective Member who has questions about the settlement may contact Plaintiff's counsel. More importantly, any Settlement Collective Member who disagrees with the allocation does not have to join the settlement, in which case he or she would not give up any rights, including not releasing any claims.

### D. Probability of success and of decertification

In considering settlements, courts should weigh the probability of success, the likelihood of delay in obtaining recoveries, and the risk inherent in any litigation. *See*, *e.g.*, *Gevaerts v. TD Bank*, No. 1:14-CV-20744-RLR, 2015 WL 6751061, at *7 (S.D. Fla. Nov. 5, 2015). These factors weigh strongly in favor of approval here.

The claim raised by the Plaintiff—that Defendants under-reimbursed its delivery drivers—involves convincing a court and/or jury that Defendants had a legal obligation to reimburse its drivers at the IRS rate, or alternatively, that the reimbursement rate paid to the class of delivery drivers was not reasonable. Plaintiff and his counsel recognize the litigation risk in proving his case and there is the potential that Plaintiff and the Settlement Collective Members could obtain no recovery of any kind. Even if Plaintiff was to prevail on the merits, there is a possibility that variations among individual delivery drivers would prevent the case from proceeding as a collective action.

Finally, the strong likelihood that any recovery would take years also weighs in favor of approval. Indeed, public policy favors settlement, especially in complex cases such as this, where substantial resources can be conserved by avoiding time, cost, and protracted litigation. *See Lynn's Food Stores, Inc.*, 679 F.2d at 1354 ("…we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation"). Plaintiff's and the class members' claims are not likely to be decided until after extensive discovery and perhaps a trial, all of which is avoided through the settlement. Even if they prevail, there would likely be an appeal. Absent settlement, the class is not likely to see any recovery for years. That fact alone weighs strongly in favor of approval.

  E. <u>Due process considerations</u>

Because there are no absent class members in a FLSA collective action, a settlement under the FLSA does not require the exacting due process considerations necessary under a class action settlement. There is, for example, no need for an objection period or a fairness hearing; instead, approval may be sought on a single motion to enter a stipulated order. *See id.* at 1353. As courts have repeatedly observed, the main reason for this is that only individuals who affirmatively opt-in are bound by the settlement. Unlike class actions, where class members are bound unless they opt-out, potential members of a FLSA collective action can be bound by a settlement (or participate in any judgment) only if they opt-in. *Calderone*, 838 F.3d at 1102.

In this case, members of the Proposed Settlement Collective will have to timely execute and return the Claim Form. Along with the Claim Form, they will receive a Notice, which is part of the Settlement Agreement, that will notify them of the existence and nature of the case, and will advise them of their options in connection with the settlement.[4] Only if they then

---

[4] The Representative Plaintiffs, who are receiving service awards in addition to their individual settlement shares, will also sign a separate general release as set forth in the Settlement Agreement.

11

independently decide to opt-in will they be bound by the settlement, including receiving the settlement payment and being bound by the release. Any individual who chooses not to opt-in is not part of the case, and is not bound in any way by the settlement or any release. That significant difference between a class action settlement and an FLSA settlement weighs in favor of approval, since the individual class members will have the opportunity to make an informed decision about whether to join the settlement, and will not be bound by it unless they affirmatively choose to do so.

F.  Conditional certification

The parties ask the Court to conditionally certify a collective action for settlement purposes only, and to send Notice (as attached to the Settlement Agreement) to the Proposed Settlement Collective. Certification of an FLSA collective action is typically a two-step process. *Hipp v. Liberty Nat'l Life, Inc.*, 252 F.3d 1208, 1218 (11th Cir. 2001). The first step, conditional certification, is considered under a more lenient standard. The second step, triggered by a motion for decertification typically filed after discovery, requires a more exacting review of whether class members (the opt-ins) are actually similarly situated.

After a case is conditionally certified, the Court allows the parties to provide notice to the potential class members, who then decide whether to join the lawsuit. All individuals who agree to join the lawsuit are then part of the case (they become plaintiffs). The standard for deciding at the conditional certification stage whether the proposed class is "similarly situated" is low. The parties here ask the Court to conditionally certify this action under the FLSA for settlement purposes, and thus to allow them to mail notice to the proposed Settlement Collective. Given the fact that the individuals who would receive notice all worked for the Defendants in the same position, had the same job title, and worked under the same or similar job description, there is

12

PD.37756567.1

sufficient evidence to meet the "lenient" evidentiary showing required to conditionally certify this action for settlement purposes.[5]

      G.    <u>Fees, costs, and service awards</u>

Plaintiff requests that the Court award attorneys' fees and litigation costs, the costs of administration, and service awards to the Service Award Recipients. Defendants do not oppose Plaintiff's request.

It is well established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to an allowance of attorneys' fees based upon the benefit obtained. *Camden I Condominium Ass'n, Inc. v. Dunkle,* 946 F.2d 768, 771 (11th Cir. 1991); *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The doctrine serves the "twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts." *In re Gould Sec. Litig.*, 727 F.Supp. 1201, 1202 (N.D. Ill. 1989); *see also Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1195 (6th Cir. 1974). The Supreme Court and the Eleventh Circuit have all noted that "[a] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as whole." *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1333 (S.D. Fla. 2001) (citing *Boeing*, 444 U.S. 472).

"In the Eleventh Circuit, class counsel is awarded a percentage of the fund generated through a class action settlement." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1358 (S.D. Fla. 2011). In *Camden,* the Eleventh Circuit held that "the percentage of the

---

[5] Defendants maintain that but for the settlement, this case should not ultimately be maintained as a collective action, and thus should ultimately be decertified if it is not settled. The fact that the case may (or should) ultimately be decertified does not affect whether it should be conditionally certified for settlement purposes.

fund approach [as opposed to the lodestar approach] is the better reasoned in a common fund case. Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden,* 946 F.2d at 774.

"The lodestar approach should not be imposed through the back door via a 'cross-check.'" *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1362. Rather, the lodestar "creates an incentive to keep litigation going in order to maximize the number of hours included in the court's lodestar calculation." *In re Quantum Health Resources, Inc.,* 962 F. Supp. 1254, 1256 (C.D. Cal. 1997).[6] Precisely for this reason, in *Camden,* the Eleventh Circuit criticized lodestar and the inefficiencies that it creates. 946 F.2d at 773–75. In so doing, the court "mandate[d] the *exclusive* use of the percentage approach in common fund cases, reasoning that it more closely aligns the interests of client and attorney, and more faithfully adheres to market practice." *Goldberger v. Integrated Resources, Inc.,* 209 F.3d 43, 50 (2d Cir. 2000) (emphasis added); *see also* Alba Conte, *Attorney Fee Awards* § 2.7, at 91 fn. 41 ("The Eleventh ... Circuit[ ] repudiated the use of the lodestar method in common-fund cases"). Under *Camden*, courts in this

---

[6] Additionally, "[a] contingency fee arrangement often justifies an increase in the award of attorney's fees." *In re Sunbeam,* 176 F. Supp. 2d at 1335 (quoting *Behrens,* 118 F.R.D. at 548); *see also In re Continental Ill. Sec. Litig.,* 962 F.2d 566 (7th Cir. 1992) (holding that when a common fund case has been prosecuted on a contingent basis, plaintiffs' counsel must be compensated adequately for the risk of non-payment); *Ressler,* 149 F.R.D. at 656 ("Numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award."); *Walters v. Atlanta,* 652 F.Supp. 755, 759 (N.D. Ga. 1985), *modified,* 803 F.2d 1135 (11th Cir.). As Judge King from the Southern District of Florida has observed:

> Generally, the contingency retainment must be promoted to assure representation when a person could not otherwise afford the services of a lawyer.... A contingency fee arrangement often justifies an increase in the award of attorney's fees. This rule helps assure that the contingency fee arrangement endures. If this "bonus" methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing.

*Behrens,* 118 F.R.D. at 548.

Circuit regularly award fees based on a percentage of the recovery, without discussing lodestar at all. *See, e.g., David,* 2010 WL 1628362.[7] "[A] common fund is itself the measure of success and represents the benchmark on which a reasonable fee will be awarded.... In this context, monetary results achieved predominate over all other criteria." *Camden,* 946 F.2d at 774 (citations and alterations omitted).

Numerous recent decisions from courts within this Circuit in similar wage and hour class/collective actions have awarded attorneys' fees comparable to that requested by class counsel here. *See, e.g.*, *Wolff v. Cash 4 Titles*, 2012 WL 5290155, at *4 (S.D. Fla. 2012) ("One-third of the recovery is considered standard in a contingency fee agreement."); *Seghroughni v. Advantus Rest., Inc.*, 2015 WL 2255278, at *1 (M.D. Fla. May 13, 2015) ("An attorney's fee… which is one-third of the settlement fund, is awarded from the settlement fund to the plaintiff's Lead Counsel. This amount is fair and reasonable in light of… fee awards in comparable cases.); *Vogenberger v. ATC Fitness Cape Coral, LLC,* 2015 WL 1883537, at *3 (M.D. Fla. April 24, 2015) (awarding a fee award of 33% of the FLSA common fund); *Graves v. Estes Heating & Air Conditioning, Inc.,* Case No. 3:14-cv-0084-TCB, Dkt. 47 (N.D. Ga. 2015) (awarding fee of 33.33% of the common fund in FLSA case); *Jackson v. Healthport Technologies, LLC,* Case No. 1:11-cv-01687-SCJ, Dkt. 68 (N.D. Ga. 2013) (approving fees and costs to Class Counsel in the amount of 33 1/3% of the common fund in FLSA case); *Morefield v. NoteWorld, LLC*, 2012 WL 1355573 (S.D. Ga. 2012) (class settlement approved with 33 1/3 of the common fund payable as attorneys' fees); *Atkinson v. Wal-Mart Stores, Inc.*, 2011 WL 6846747, at *6 (M.D. Fla. 2011) (approving class settlement with one-third of maximum common fund apportioned as attorney's fees); *Hosier v. Mattress Firm, Inc.*, 2012 WL 2813960, at *4 (M.D. Fla. June 8, 2012)

---

[7] *See also Stahl v. MasTec, Inc.,* 2008 WL 2267469 (M.D. Fla. 2008); *Sands Point Partners, L.P. v. Pediatrix Med. Group, Inc.,* 2002 WL 34343944 (S.D. Fla. 2002); *Fabricant v. Sears Roebuck & Co.,* 2002 WL 34477904 (S.D. Fla. 2002).

PD.37756567.1

(approving a common fund FLSA settlement which provided 30% of the common fund for attorneys' fees and costs); *Kemper v. Rent-A-Center, Inc.,* Case No. 4:00-cv-00435-RH-WCS, Dkts. 14-15 (N.D. Fla. 2000) (awarding 33.33% of common fund to plaintiffs' counsel); *Stahl v. Mastec, Inc.,* 2008 WL 2267469 at *2 (M.D. Fla. 2008) (approving attorney fees of $3,744,500.00 out of a common fund of $13,137,365.00); *Moultry v. Cemex, Inc.*, Case No. 8:07-cv-00453-MSS, Dkt. 145 (M.D. Fla. 2008) (awarding 32.25% of common fund as attorneys' fees); and *Kimmel v. Venture Construction Co.*, Case No. 1:10-cv-01388-RLV (N.D. Ga. 2010) (Dkt. 70) (approving 30% of common fund as attorneys' fees and costs).[8]  As such, this Court should approve the attorneys' fees requested here.  Defendant does not oppose Plaintiff's request for an award of 33.3% of the common fund to their counsel for attorneys' fees and costs incurred in this action, as well as for the costs of administration.

Defendant also agrees to pay service awards in the amount of Two Thousand Five Hundred Dollars ($2,500.00) to the named Plaintiff, Cody Beavers, and Five Hundred Dollars ($500.00) to each of the opt-in Plaintiffs, Dakota Shawn Jolly and Teela Holley, in addition to each of their individual settlement shares.  These payments are compensation for the individuals who spent time and effort aiding in the investigation and development of the claims asserted by

---

[8] Additionally, courts outside this Circuit also approve similar fee requests in common fund cases.  *See Barber, et al v. Premier Delivery Services, Inc. et al.,* Case No. 2:13-cv-00001-ALM-MRA, Dkt. 51 (S.D. Oh. 2014) (finding a fee of approximately 31% of the common fund to be "reasonable and appropriate..."); *(Willix v. Healthfirst, Inc.,* 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) ("Class Counsel's request for 33 1/3% of the fund is reasonable and 'consistent with the norms of class litigation…' "); *Prasker v. Asia Five Eight LLC, et. al,* 2010 WL 476009, *6 (S.D.N.Y. 2010) (stating that "[i]n wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award" and awarding an attorney fee payment of 33% of the common fund); *Duchesne v. Michael Cetta, Inc., et. al.,* 2009 WL 5841175, *3 (S.D.N.Y. 2009) (approving attorney fees of $1,015,000 out of a common fund of $3,150,000, or 32.2%, and stating that the "percentage of recovery" method is consistent with the trend in the Second Circuit; *Faltaous v. Johnson and Johnson, et. al.,* 2007 WL 3256833, *10 (D.N.J. 2007) (stating that "attorneys' fees of approximately 30 percent of the common fund are also regularly awarded in labor and employment law class actions.") (internal citations omitted); and *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar,* 2009 WL 5851465, *5 (S.D.N.Y. 2009) (awarding 33% of common fund as attorneys' fees).

Plaintiff. "[T]here is ample precedent for awarding incentive compensation to class representatives at the conclusion of a successful class action." *David v. American Suzuki Motor Corp.*, 2010 WL 1628362, at *6 (S.D. Fla. 2010). Courts have consistently found service awards to be an efficient and productive way to encourage members of a class to become class representatives. *See, e.g.*, Hosier v. Mattress Firm, Inc., No. 3:10-CV-294-J-32JRK, 2012 WL 2813960, at *5 (M.D. Fla. June 8, 2012), report and recommendation adopted, No. 3:10-CV-294-J-32JRK, 2012 WL 2838610 (M.D. Fla. July 10, 2012) ("Courts routinely approve incentive awards to compensate named plaintiffs for the services they provide and the risks they incurred during the course of the class action litigation."); and *Ingram v. The Coca–Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (awarding class representatives $300,000 each, explaining that "the magnitude of the relief the Class Representatives obtained on behalf of the class warrants a substantial incentive award."); *Fresco v. Auto. Directions, Inc.*, 03-CIV-61063-MARTINE, 2009 WL 9054828 at *6 (S.D. Fla. Jan. 20, 2009) (approving enhancement awards of $15,000); *Garcia v. Gordon Trucking, Inc.*, 1:10-CV-0324 AWI SKO, 2012 WL 5364575 at *11 (E.D. Cal. Oct. 31, 2012) (same); *Perkins v. Am. Nat. Ins. Co.*, 3:05-CV-100CDL, 2009 WL 111631 at *2 (M.D. Ga. Jan. 14, 2009) (same). Additionally, the service awards also represent separate consideration for a general release and are therefore permissible. *See Dozier v. DBI Servs., LLC* No. 3:18-CV-972-BJD-MCR, 2021 WL 6061742, at *5 (M.D. Fla. Dec. 22, 2021) (Report and Recommendation holding, adopted on January 19, 2022[D.E. 132] that the service payments were not prohibited by the Eleventh Circuit's opinion in *Johnson v. NPAS Solutions, LLC,* 975 F.3d 1244, when also tied to consideration for a general release). Defendant does not oppose Plaintiff's request for approval of the service awards. Therefore, this Court should approve the requested service awards.

V.

Conclusion

In sum, the parties, through their counsel, submit the Settlement Agreement as a fair and reasonable resolution of the disputed issues, and believe strongly that its entry will ensure to "secure the just, speedy, and inexpensive determination" of this action. Fed. R. Civ. P. 1. Accordingly, the Parties urge this Court to: (i) conditionally certify this case for settlement purposes as a collective action under Section 216(b) of the FLSA; (ii) approval of the Settlement Agreement and its terms, finding them to be fair, reasonable, and adequate, and directing the Parties consummate the terms and provisions of the Settlement Agreement; (iii) approval as to form and content Notice to the Settlement Collective Members; (iv) directing the mailing of the Notice by first-class mail to the Settlement Collective Members; (v) approval of Plaintiff's counsel's motion for attorneys' fees; (vi) approval of the requested service awards; (vii) permanently enjoins all Opt-in Plaintiffs from prosecuting against the Released Parties (as defined in the Settlement Agreement) all of the Opt-in Plaintiff's Released Claims (defined in the Settlement Agreement); and (viii) permanently enjoins Plaintiffs Beavers, Jolly, and Holley from prosecuting against the Released Parties the Plaintiffs' Released Claims (as defined in their separate supplemental settlement agreements).

Respectfully submitted, this 1st day of August, 2022.

| /s/ C. Ryan Morgan | /s/ Michael E. Turner |
|---|---|
| C. RYAN MORGAN, ESQ. | Michael E. Turner, Esq. |
| (*Pro Hac Vice*) | PHELPS DUNBAR LLP |
| Florida Bar No.: 0015527 | 2001 Park Place North, Suite 700 |
| JOLIE N. PAVLOS, ESQ. | Birmingham, Alabama 35203 |
| (*Pro Hac Vice Forthcoming*) | Telephone: (205) 716-5200 |
| Florida Bar No.: 0094694 | Facsimile: (205) 716-5389 |

PD.37756567.1

| | |
|---|---|
| 20 North Orange Avenue, Suite 1400<br>Orlando, Florida 32801<br>Telephone: (407) 204-2170<br>Facsimile: (407) 245-3401<br>E-mail: rmorgan@forthepeople.com<br>    jpavlos@forthepeople.com<br><br>*And*<br><br>**/s/ David A. Hughes**<br>David A. Hughes, Esq.<br>Hardin & Hughes, LLP<br>2121 14th Street<br>Tuscaloosa, AL 35401<br>Direct: (205) 523-0463<br>Fax: (205) 344-6188<br>dhughes@hardinhughes.com<br><br>***Attorneys for Plaintiffs*** | Email: michael.turner@phelps.com<br><br>***Attorneys for Defendants*** |

19

PD.37756567.1