FILED
2022 Aug-01  PM 04:54
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT "A"

## SETTLEMENT AND RELEASE AGREEMENT

Plaintiffs, Cody Beavers, Dakota Shawn Jolly, and Teela Holley, on behalf of themselves and the Settlement Collective defined below, on the one hand, and Defendants, Cahaba Heights Plaza, LLC, United Pizza, Inc., and Mohammed (David) Dawoud, on the other hand, hereby mutually agree to a compromise settlement, subject to approval as discussed below, through this Settlement and Release Agreement ("Settlement" or "Agreement"):

## I. DEFINITIONS

In addition to other terms defined in this Agreement, the terms below have the following meaning in this Agreement:

1.      **"Action"** means the threatened litigation by Plaintiffs and the collective action complaint to be filed by them in the United States District Court for the Northern District of Alabama for the purpose of obtaining approval of the Settlement.

2.      **"Claims Administrator"** means the third-party claims administrator, Simpluris, Inc., who has been agreed to by the Parties to administer the Settlement.

3.      **"Collective Counsel"** means the law firm of Morgan & Morgan, PA and any local counsel with whom they choose to associate in connection with filing the complaint in the Action.

4.      **"Collective Representatives"** or **"Plaintiffs"** means Cody Beavers, Dakota Shawn Jolly, and Teela Holley.

5.       **"Court"** means the United States District Court for the Northern District of Alabama.

6.      **"Defendants"** means Cahaba Heights Plaza, LLC, United Pizza, Inc., and Mohammed (David) Dawoud.

7.      **"Defendants' Counsel"** means the law firm of Phelps Dunbar LLP.

8.      **"Effective Date"** means the day the Settlement is Final as defined in ¶ 9, below.

SETTLEMENT AND RELEASE AGREEMENT

9.      **"Final"** means the date by which all of the following has occurred:  (a) the Court has entered orders granting approval of the Settlement without modification; (b) the applicable date for seeking appellate review of the Court's final approval of the Settlement has passed without a timely appeal having been filed; (c) an appellate court has rendered a final decision or judgment affirming the Court's approval of the Settlement without modification, and the time for any further appeal or appellate review has expired; or (d) any timely appeal has been dismissed.  In the event any appeal does not result in the approval of the Settlement, without modification, then the Settlement shall be void ab initio and of no further force or effect, and the Parties shall be returned in all respects to their respective positions.

10.      **"FLSA Opt-in Form and Release of Claims"** means the approved form attached hereto as Exhibit A that is agreed to by the Parties and, which following preliminary approval of the Settlement, will be mailed with the Notice to each Settlement Collective Member and which must be signed and timely returned by a Settlement Collective Member to become an Opt-in Plaintiff and participate in the Settlement.

11.      **"Maximum Settlement Amount"** means ONE HUNDRED FIFTY THOUSAND AND NO/100 DOLLARS ($150,000.00).   Defendants' gross aggregate payments under this Settlement and Release Agreement shall not under any circumstances exceed the "Maximum Settlement Amount."

12.      **"Net Settlement Amount"** means the Maximum Settlement Amount minus any approved amounts for Collective Counsel's fees and costs, the service payments to the Collective Representatives, and the expenses of the Claims Administrator. The Net Settlement Amount shall not exceed EIGHTY-EIGHT THOUSAND AND NO/100 DOLLARS ($88,000.00) under any circumstances.

You created this PDF from an application that is not licensed to print to novaPDF printer (http://www.novapdf.com)

13.     **"Notice"** means the approved notice in the form attached hereto as <u>Exhibit B</u> that will be agreed upon by the Parties and which, following preliminary approval of the Settlement, will be mailed to each Settlement Collective Member explaining the Settlement terms and process and time period for submitting a claim, as set forth herein.

14.     **"Opt-in Plaintiff(s)"** means all Settlement Collective Members who properly and timely file a claim under this Settlement, as set forth herein, and are bound by the release of claims set forth herein.

15.     **"Parties"** means Plaintiffs, Cody Beavers, Dakota Shawn Jolly, and Teela Holley, together with Defendants, Cahaba Heights Plaza, LLC, United Pizza, Inc., and Mohammed (David) Dawoud, and "Party" means any of the Parties.

16.     **"Release Period"** means the period dating from April 15, 2019, through the date of preliminary approval by the Court of the Settlement in the Action.

17.     **"Settlement Collective"** or **"Settlement Collective Member(s)"** means all individuals who are reflected on the Collective Data List, which, for the purposes of this Settlement only and for no other purpose whatsoever, shall consist of all delivery drivers who worked for Defendants (at United Pizza, Inc. store numbers 5395 and 5822, in Dora, Alabama, and Hamilton, Alabama) during the Release Period.

18.     **"Settlement Payment"** means the distribution of the Net Settlement Amount to Opt-in Plaintiffs on a pro rata basis, pursuant to ¶ 30, below.

## II.  <u>RECITALS</u>

19.     On February 25, 2021, legal counsel for Cody Beavers filed a legal action in the Northern District of Alabama styled *Cody Beavers, individually and on behalf of similarly situated persons, v. Cahaba Heights Plaza, LLC, and Mohammed (David) Dawoud*, Civil Action No. 2:21-cv-00304-JHE (the "2021 FLSA Lawsuit"), asserting a claim for alleged failure to pay proper

You created this PDF from an application that is not licensed to print to novaPDF printer (http://www.novapdf.com)

minimum wage under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), based on the claim that he was not properly reimbursed for mileage expenses related to the business use of his personal vehicle. Defendants Cahaba Heights Plaza, LLC, and Mohammed (David) Dawoud, the named defendants in the 2021 FLSA Lawsuit, filed Answers in which they denied all liability and asserted various defenses.

20. Thereafter, the Parties engaged in informal discovery in the 2021 FLSA lawsuit, including exchanging productions of data, and exchanging collective damage calculations and settlement demands.

21. On February 4, 2022, the Parties agreed to mediate the claims asserted in the 2021 FLSA Lawsuit and entered into a tolling agreement as the applicable statute of limitations that applied to the claims of Cody Beavers, Dakota Shawn Jolly, and Teela Holley, only.

22. Also on February 4, 2022, the Parties filed a Joint Motion to Dismiss the 2021 FLSA Lawsuit Without Prejudice, pursuant to Rule 41 of the Federal Rules of Civil Procedure.

23. On April 26, 2022, the Parties mediated before Kay Wolf, Esq., an experienced wage and hour collective action mediator in Orlando, Florida, and after a day of mediation were able to reach an agreement to compromise and settle this putative collective action on the terms set forth within this agreement for the Maximum Settlement Amount.

### III.  TERMS OF SETTLEMENT

24. **Condition Precedent**:  The Settlement and the payments described herein are conditioned upon the Settlement becoming Final and all terms and conditions of the Settlement being satisfied.

25. **Maximum Settlement Amount**:  Defendants' total aggregate payments under this Agreement shall under no circumstances exceed the total sum of ONE HUNDRED FIFTY THOUSAND AND NO/100 DOLLARS ($150,000.00).

4

SETTLEMENT AND RELEASE AGREEMENT

You created this PDF from an application that is not licensed to print to novaPDF printer (http://www.novapdf.com)

26.  **Taxes:**  The Opt-in Plaintiffs shall indemnify and hold Defendants and Defendants' Counsel harmless for taxes and tax expenses associated with or as a result of any payment that they received under the Settlement (including, without limitation, taxes payable by reason of any such indemnification); provided, however, that, without making any representation or warranty concerning the tax treatment of any sums to be paid under this Agreement, and provided that nothing herein is intended as, and shall not be construed as, any representation or admission by Defendants or Defendants' Counsel  that any employer's share of income taxes shall be owed with respect to any such sums, the Parties acknowledge and agree that the indemnification obligations of the Opt-in Plaintiffs hereunder shall not extend to any potential employer's share of employment taxes owed by Defendants, if any.  The Parties intend for this settlement to reimburse Opt-in Plaintiffs for alleged non-taxable vehicle costs expended by Opt-in Plaintiffs in furtherance of their delivery duties on behalf of Defendants.

27.  **Collective Counsel's Attorneys' Fees, Costs and Expenses:**  Plaintiffs and/or Collective Counsel will request, and Defendants will not oppose, a payment from the Maximum Settlement Amount for attorneys' fees for all the work already performed and all the work remaining to be performed in this Action and for costs and expenses incurred by Collective Counsel in prosecuting the Action and implementing the terms of the Settlement, including work performed and costs and expenses incurred in the 2021 FLSA Lawsuit by Collective Counsel and any other attorneys representing Plaintiffs in that lawsuit, in a gross amount not to exceed 33.33% of the Maximum Settlement Amount, or a total of FIFTY THOUSAND AND No/100 DOLLARS ($50,000.00).  The award of Collective Counsel's attorneys' fees, costs and expenses approved by the Court shall be wired to the Claims Administrator within fifteen (15) days after the Effective Date of the settlement, pursuant to ¶ 40, below.  The Parties agree that any reduction in the amount of

SETTLEMENT AND RELEASE AGREEMENT

You created this PDF from an application that is not licensed to print to novaPDF printer (http://www.novapdf.com)

attorneys' fees, costs, and/or expenses approved for Collective Counsel shall not be a basis for rendering the entire Settlement voidable or unenforceable.

28.    **Service Payment to Collective Representatives:**  Subject to the Court's approval, Plaintiffs Cody Beavers, Dakota Shawn Jolly, and Teela Holley shall be paid service payments in a total amount not to exceed THREE THOUSAND FIVE HUNDRED AND NO/100 DOLLARS ($3,500.00), and of that total amount Beavers shall receive a maximum of $2,500.00, Jolly shall receive a maximum of $500.00, and Holley shall receive a maximum of $500.00, such service payments to be paid from the Maximum Settlement Amount, for their service as Collective Representatives, and in consideration for the General Release of Claims as defined in ¶ 43, below, in addition to any payments they each may otherwise receive as an Opt-in Plaintiff.  The service payments to the Collective Representatives approved by the Court shall be wired to the Claims Administrator within fifteen (15) days after the Effective Date of the settlement, pursuant to ¶ 40 below.  The service payments shall be treated as non-employee income and the Collective Representatives shall be issued an IRS Form 1099 in the amount of their individual service payments.  The Parties agree that any reduction in the amount of any of the Collective Representatives' requested service payments shall not be a basis for rendering the entire Settlement voidable or unenforceable.

29.    **Settlement Administration Costs:**  All costs incurred by the Claims Administrator in administering the Settlement (including, but not limited to, handling the mailing of notices and individual checks to Opt-in Plaintiffs, and follow-up reminder notices, as set forth herein) shall not exceed EIGHT THOUSAND FIVE HUNDRED AND NO/100 DOLLARS ($8,500.00) and will be paid from the Total Settlement Fund.

30.    **Calculation of Pro Rata Share of the Net Settlement Fund for Opt-in Plaintiffs:**

SETTLEMENT AND RELEASE AGREEMENT

You created this PDF from an application that is not licensed to print to novaPDF printer (http://www.novapdf.com)

(a)     Within fourteen (14) days after receipt of the Collective Data List (as set forth in ¶ 34(a), below), the Claims Administrator shall calculate each Settlement Collective Member's Settlement Payment, as set forth herein, and send a spreadsheet containing the calculated Settlement Payments to Counsel for the Parties.  The Parties shall thereafter shall have seven (7) days to object to the calculations in writing to the Claims Administrator (with simultaneous delivery to the other Party) and, in the event of an objection, shall immediately work in good faith thereafter to resolve the dispute informally and to timely communicate to the Claims Administrator the resolution of any such dispute.

(b)     Each Settlement Collective Member's Settlement Payment will be calculated in the following manner:

- For each Settlement Collective Member, the total number of his or her recorded miles making deliveries for Defendants during the Release Period shall be his/her "Individual Miles."  The aggregate of all Individual Miles among all Settlement Collective Members shall be the "Collective's Miles."

- Each Settlement Collective Member's Individual Miles shall be divided by the Collective's Miles to obtain his/her "Payment Ratio."

- Each Settlement Collective Member's Payment Ratio shall be multiplied by the Net Settlement Amount to arrive at his/her Settlement Payment, which shall be a minimum of $30.00.

(c)     Effect of Making a Claim for the Settlement Payment:   Only the Settlement Collective Members who submit a timely and proper claim under this Settlement (including signing and returning the FLSA Opt-in Form and Release of Claims and a W-9) as set forth herein and agree to join the Action and become Opt-in-Plaintiffs are bound by the release set forth in ¶ 41, below.

SETTLEMENT AND RELEASE AGREEMENT

You created this PDF from an application that is not licensed to print to novaPDF printer (http://www.novapdf.com)

Settlement Collective Members who do not satisfy the foregoing terms will not release any claims or be bound by this Settlement Agreement.

(d)     Common Fund Settlement:  This is a common fund settlement.  Defendants shall not be obligated to pay any Settlement Payments to Settlement Collective Member unless they satisfy the terms of this Settlement, specifically the timely and proper delivery of a signed FLSA Opt-in Form and Release of Claims and W-9.

(e)     Tax Allocation of Settlement Payments:   One-hundred percent (100%) of the Settlement Payments made will be treated as non-taxable payments in reimbursement for incurred expenses and in settlement of claims for alleged interest and penalties.   No payroll or tax withholdings will be taken from these payments.   The Opt-in Plaintiffs will be responsible for correctly characterizing their respective Settlement Payments for tax purposes and paying any taxes owing on said amounts (including without limitation, any interest or penalties required by law).  Any tax obligation(s) arising from the Settlement Payments will be the sole responsibility of each Opt-in Plaintiff.  Opt-in Plaintiffs must indemnify, defend, and hold Defendants harmless for any federal, state, and local tax liability, including taxes, interest, penalties, or the like, and required withholdings, which may be or is asserted against or imposed upon Defendants by any taxing authority based upon any failure to pay any taxes due on the amounts being paid to the Opt-in Plaintiffs pursuant to this Agreement; provided, however, that, without making any representation or warranty concerning the tax treatment of any sums to be paid under this Agreement, and provided that nothing herein is intended as, and shall not be construed as, any representation or admission by Defendants that any employer's share of income taxes shall be owed with respect to any such sums, the Parties acknowledge and agree that the indemnification obligations of the Opt-in Plaintiffs hereunder shall not extend to any potential employer's share of employment taxes owed by Defendants, if any.  None of the Released Parties nor any of their representatives have made any

You created this PDF from an application that is not licensed to print to novaPDF printer (http://www.novapdf.com)

DocuSign Envelope ID: 8DB26384-D68D-4B-9D09-936D98F5C3C3

warranty concerning the tax treatment of any sums to be paid under this Agreement, and Settlement Collective Members have not relied on any such representation in determining the tax treatment of such sums.

(f)     None of the payments described in this Agreement shall be subject to matching contributions or included as benefits-eligible earnings under any benefit plan or policy of the Defendants or any of its current or former parent companies, subsidiaries or affiliates.

(g)     None of the payments and/or distributions detailed in this Section shall be made until the dates and satisfaction of other conditions precedent specifically called for herein.

31.     **Conflict of Terms:**   In the event of a conflict between the terms set forth in any communication (including, without limitation, the Notice) and this Agreement, the terms of this Agreement shall control.

## IV.   SETTLEMENT PROCEDURES

32.     **Filing of Action and Motion for Preliminary Approval:**   Within fourteen (14) days after the execution of this Agreement by all Parties, Plaintiffs shall file in the United States District Court for the Northern District of Alabama a collective action complaint with a claim against Defendants under the FLSA for allegedly failed to pay proper minimum wage under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA") for the Release Period based on the claim that they were not properly reimbursed for mileage expenses related to the business use of his personal vehicle (for the purpose of obtaining approval of the settlement only).  Defendants shall stipulate to the filing of the Action and shall not be required to file an Answer or any other responsive pleading under the Federal Rules of Civil Procedure.  Within seven (7) days thereafter, the Parties shall file a joint motion for approval of the Settlement, applying to the Court for the entry of an Order that will be agreed upon by the Parties prior to submission that provides in substance the following:

You created this PDF from an application that is not licensed to print to novaPDF printer (http://www.novapdf.com)

DocuSign Envelope ID: 86B26384-D68D-44B-9809-036D6B75C3C3

(a)     Approving the Settlement, adjudging the terms thereof to be fair, reasonable, and adequate, and directing consummation of its terms and provisions;

(b)     Certifying the Settlement Collective for purposes of effectuating the Settlement;

(c)     Approving as to form and content the proposed Notice to the Settlement Collective Members;

(d)     Directing the mailing of the Notice by first-class mail to the Settlement Collective Members;

(e)     Approving Collective Counsel's motion for attorneys' fees and costs;

(f)     Approving the Collective Representatives' service payments;

(g)     Permanently enjoining all Opt-in Plaintiffs from prosecuting against the Released Parties (defined below) any and all of the Opt-in Plaintiffs' Released Claims (defined below);

(h)     Permanently enjoining the Collective Representatives from prosecuting against the Released Parties any and all of the Collective Representatives' Released Claims (as defined below); and

(i)     Ordering the Parties to comply with the terms of the Settlement.

33.     **Confidentiality:**  The Parties agree to treat the Settlement and/or this Agreement as confidential and agree that they shall not communicate to third parties in any way concerning this Agreement or any of its terms or conditions.  The Parties and their Counsel may not make any public comment, make or have any communications to or with the press or media, or make any form of advertising or public announcement, utilize any form of social media or website (including law firm website), or issue any press release or media release regarding the terms of this Agreement.  If any member of the media contacts the Parties or their counsel regarding this matter, the Party or counsel shall only respond that the matter has been resolved.  However, Collective Counsel shall be permitted to make a general reference to a settlement involving pizza delivery drivers (without

SETTLEMENT AND RELEASE AGREEMENT

You created this PDF from an application that is not licensed to print to novaPDF printer (http://www.novapdf.com)

DocuSign Envelope ID: 8D826384-D68F-44AB-9409-9D36D0B75C3C3

naming Defendants specifically), including the dollar amount, on their website and marketing materials, without violating this Agreement. Notwithstanding the foregoing, the Parties shall have the right to disclose this Agreement as may be required under federal or state tax and/or securities laws or under generally accepted accounting principles. Plaintiffs and Collective Counsel agree that they will not do anything, directly or indirectly, to encourage any Settlement Collective Member to file or make a claim under this Settlement. Nothing in this Agreement shall prevent Defendants or Defendants' Counsel from making any necessary, appropriate, or required disclosures to regulators, auditors, bankers, and the like, or from complying with their obligations under the law. Collective Counsel will promptly notify Defendants' Counsel of any third-party legal demand that they disclose information pertinent to the Settlement or this Agreement. Plaintiffs agree not to oppose any motion by Defendants to file the Agreement under seal or for *in camera* review in the Action, or, alternatively, file the Agreement with the monetary terms redacted, and the decision to file such a motion shall be made by Defendants. The Parties agree to file this Agreement in the Action if required by the Court. However, if the Court requires the public filing of this Agreement, such requirement will not affect the validity of the settlement.

34. **Issuance of Notice to Settlement Collective Members:**

(a)    Within fourteen (14) days after the Court's entry of its Order Granting Preliminary Approval of the Settlement, Defendants will provide to the Claims Administrator the names, last known addresses, last known telephone numbers and the last four digits of the social security numbers of the Settlement Collective Members, along with data indicating the number of miles driven for each Settlement Collective Member during the Release Period (the "Collective Data List"). Defendants will simultaneously provide Collective Counsel with a copy of the Collective Data List that does not include the contact information or social security numbers of the Settlement Collective Members. This data shall be based on Defendants' payroll and/or other business records.

You created this PDF from an application that is not licensed to print to novaPDF printer (http://www.novapdf.com)

(b)     First Mailing of Notice:  Within fourteen (14) business days after the expiration of the deadline for the Parties to object to the Collective Data List or, if applicable, the date of the Parties' communication to the Administrator of their resolution of any objections to the Collective Data List, the Settlement Administrator will mail the proposed Notice, with its attached FLSA Opt-in Form and Release of Claims and a blank W-9 Form, to all Settlement Collective Members.  The Notice shall inform the Settlement Collective Members of their eligibility to participate in the Settlement by signing and returning FLSA Opt-in Form and Release of Claims along with completed W-9 Forms, as well as the amount of their respective Individual Payment if they do so.

(c)     The Claims Administrator shall consult the National Change of Address Registry, to the extent practicable, to confirm the addresses for the Settlement Collective Members.

(d)     Undeliverable Notices:  If a Notice sent to a Settlement Collective Member is returned as undeliverable and with no forwarding address, the Claims Administrator will, within three (3) business days of receipt of the undeliverable Notice, undertake to use its discretion to take all reasonable steps to determine the Settlement Collective Member's current address, if possible.

(e)     Second Mailing of Notice:  If an additional address is located for a Settlement Collective Member whose notice was returned as undeliverable, the Claims Administrator will promptly resend the Notice to that Settlement Collective Member's updated address.  If a Notice sent to a Settlement Collective Member is returned by the U.S. Postal Service with a forwarding address, then the Claims Administrator shall, within three (3) business days of receipt of the returned Notice, re-mail the Notice to the forwarding address.

(f)     Claim Deadline:  The deadline for a Settlement Collective Member to make a claim in this Settlement and consent to becoming an Opt-in Plaintiff shall be forty-five (45) calendar days after the First Mailing of Notice or, in the case of a Settlement Collective Member for whom the first Notice was returned as undeliverable and an additional address was found or the Notice was re-

You created this PDF from an application that is not licensed to print to novaPDF printer (http://www.novapdf.com)

mailed to a forwarding address, forty-five (45) calendar days after the re-mailing of the Notice. Settlement Collective Members will only be entitled to receive their *pro rata* share of the Net Settlement Fund if they sign and postmark a FLSA Opt-in Form and Release of Claims and W-9 on or before the Claim Deadline.

35. **Records and Disputes**: If a Settlement Collective Member wishes to dispute the calculation of his or her Settlement Payment, the Settlement Collective Member may so notify the Claims Administrator or Collective Counsel and should produce any supporting information and/or evidence available to the Settlement Collective Member. The Parties will promptly meet and confer in an attempt to resolve any disputes and will endeavor to resolve the issue informally. In the event of a dispute and without any records to the contrary, the records of Defendants will control the resolution of the dispute. If a person believes that he or she was wrongly excluded from being a member of the Settlement Collective, the Parties also will endeavor to resolve the issue informally.

36. **Reports by Claim Administrator**:

(a)    Thirty (30) days after the First Mailing of Notice, the Claims Administrator shall provide to Collective Counsel and Defendants' Counsel a written report setting forth the total number of Settlement Collective Members to whom Notices were mailed, the number of Notices returned as refused, undelivered, or undeliverable, and the number of Notices re-mailed.

(b)    Within sixty (60) days after the First Mailing of Notice, the Claims Administrator shall provide to all counsel the First Opt-in Report which shall identify the Plaintiffs and those Opt-in Plaintiffs who signed and timely returned the FLSA Opt-in Form and Release of Claims, along with completed W-9 Forms, within forty-five (45) days following the date of the First Mailing of Notice (the "Initial Opt-ins"). The First Opt-in Report shall include the amount necessary to fund the Settlement Payments to the Plaintiffs and the Opt-in Plaintiffs on the First Opt-in Report.

SETTLEMENT AND RELEASE AGREEMENT

You created this PDF from an application that is not licensed to print to novaPDF printer (http://www.novapdf.com)

(c)     Within seven (7) days following the final Consent Deadline for all Settlement Collective Members who received a re-mailed Notice, the Claims Administrator shall provide to all counsel a Second Opt-in Report which shall identify all of those remaining Opt-in Plaintiffs who timely signed and returned the FLSA Opt-in Form and Release of Claims, along with the completed W-9 Forms, after the First Opt-in Report (the "Remaining Opt-ins"). The Second Opt-in Report shall include the final amount necessary to fund the Settlement Payments to the Remaining Opt-ins and the total amount necessary to fund the Settlement Payments to all Opt-in Plaintiffs. With the Second Opt-in Report, Claims Administrator shall provide to all counsel proof that the FLSA Opt-in Form and Release of Claims were submitted on or before the applicable Consent and Claim Deadline. Plaintiffs' Counsel and Defendants' Counsel will review the proof of timeliness and cooperate in good faith to resolve any timeliness issues or objections within seven (7) calendar days of receiving the Second Opt-in Report.

37.     **Untimely FLSA Opt-in Form and Release of Claims**: If a Settlement Collective Member attempts to participate in the Settlement by returning a Claim and Release Form after the applicable Claim Deadline, Defendants may, in their sole discretion, accept the untimely Consent Form or instruct the Claims Administrator to do so.

38.     **Defendants' Right to Cancel Settlement**: In the event that the total amount of the Settlement Payments to Plaintiffs and Opt-in Plaintiffs listed on the Second Opt-in report exceeds 43.25% of the Net Settlement Amount ($38,060.00), Defendants have the right, in their sole discretion, to cancel the Settlement in its entirety and if Defendants elect to cancel, the Settlement shall be null and void, with the Parties returning to the *status quo ante* and maintaining all rights and arguments existing prior to the Settlement. Defendants shall communicate their decision to cancel to Collective Counsel in writing no later than fourteen (14) calendar days after receipt of the Second Opt-in Report.

SETTLEMENT AND RELEASE AGREEMENT

You created this PDF from an application that is not licensed to print to novaPDF printer (http://www.novapdf.com)

39.   **Filing of Motion for Final Judgment**:   Within ten (10) business days of the expiration of Defendants' right to cancel the Settlement, as set forth in ¶ 38, above, the Parties shall file a joint motion applying to the Court for the entry of an Order that will be agreed upon by the Parties prior to submission that provides in substance the following:

(a)   Approving, directing, and permitting the distribution by the Claims Administrator of Settlement Payments to Opt-in Plaintiffs and, in the amounts previously approved by the Court, service payments to Collective Representatives, and attorneys' fees and costs to Collective Counsel;

(b)   Ordering and directing that the Parties continue to otherwise comply with the terms of the Settlement;

(c)   Entering judgment in the Lawsuit, forever and permanently barring Plaintiffs and all Opt-in Plaintiffs from prosecuting any of the claims in the Action and Released Claims, as well as barring Plaintiffs from prosecuting those claims subject to their General Release, against Defendants and the Released Parties, provided that that Opt-in Plaintiffs receives and cashes or negotiates his or her Settlement Payment check; and

(e)   Dismissing the Action, with prejudice, costs taxed as paid.

40.   **Funding and Distribution of Settlement Payments and Other Required Payments**:

(a)   Within fourteen (14) days of the Effective Date, Defendants shall wire to the Claims Administrator an amount equal to pay all Settlement Payments to Opt-in Plaintiffs, Collective Counsel's approved attorneys' fees and costs, and the Collective Representatives' approved Service Awards.  Claims Administrator shall establish and maintain a Qualified Settlement Fund (QSF) for the foregoing amounts.

SETTLEMENT AND RELEASE AGREEMENT

You created this PDF from an application that is not licensed to print to novaPDF printer (http://www.novapdf.com)

(b)     Within fourteen (14) days of receipt of the settlement funds, the Claims Administrator shall issue checks to Collective Counsel, Collective Representatives, and the Opt-in Plaintiffs, as set forth herein.

(c)     If a Settlement Payment envelope to any Opt-in Plaintiff is returned as undeliverable, then within seven (7) days of receipt of the returned envelope the Claims Administrator will use its discretion to take all steps necessary to locate an updated mailing address for that Opt-in Plaintiff.  If an additional address is located for that Opt-in Plaintiff, the Claims Administrator will promptly resend the Settlement Payment to that Opt-in Plaintiff's updated address.  If a Settlement Payment envelope sent to an Opt-in Plaintiff is returned by the U.S. Postal Service with a forwarding address, then the Claims Administrator shall, within three (3) business days of receipt of the returned envelope, re-mail the Settlement Payment to that Opt-in Plaintiff's forwarding address.  If the Claims Administrator is unable to locate an updated address for an Opt-in Plaintiff, then that Settlement Payment shall be held in a Contingency Fund as discussed below.

(d)     The Claims Administrator shall establish, as part of the QSF, a contingency fund (the "Contingency Fund") funded by the amount of (i) Settlement Payments that are not able to be delivered to Opt-in Plaintiffs because of a lack of a confirmed address and (ii) Settlement Payments to Opt-in Plaintiffs who do not cash or negotiate their checks for such Payments within 180 calendar days of mailing (including re-mailed checks), following which such checks shall become stale and non-negotiable.  The Contingency Fund shall be used to pay (i) Opt-in Plaintiffs who do not cash or negotiate their Settlement Payment check in a timely matter but who submit proof of identity satisfactory to the Claims Administrator within the time of the Contingency Fund; and (ii) Settlement Collective Members who submit late or improper claims in the amount of their Settlement Payment, subject to the running of the applicable statute of limitations under the FLSA and provided that they complete and sign FLSA Opt-in Form and Release of Claims and W-9.

You created this PDF from an application that is not licensed to print to novaPDF printer (http://www.novapdf.com)

(e)     Within seven (7) calendar following the expiration of the 180-day period for cashing or negotiating Settlement Payment checks, the Claims Administrator shall provide to the Parties a list of Opt-in Plaintiffs who did not cash or negotiate their settlement checks or to whom checks were not mailed due to a lack of a confirmed address.  The Claims Administrator shall keep the Contingency Fund in place for 120 days after the expiration of the 180-day deadline for Opt-in Plaintiffs to cash Settlement Payment Checks.  Any unclaimed amount in the Contingent Fund remaining at the end of that 120-day period shall be returned to Defendants.  The Claims Administrator shall wire to Defendants this unclaimed amount within seven (7) calendar days of the expiration of the foregoing 120-day period and close the QSF(s) it has established for the Settlement.

(f)     On or before the expiration of the 120-day period described in ¶ 40(e), above, the Claims Administrator shall provide a final accounting in writing to the Parties of its costs and expenses associated with administering the Settlement.  Subject to the maximum set forth in ¶ 29, above, the Defendants shall wire to the Claims Administrator an amount equal to pay its costs and expenses within seven (7) days of receiving the final accounting.

(g)     Claims Administrator shall be responsible for and will issue and distribute IRS Form 1099s by regular U.S. Mail to all Collective Counsel, Plaintiffs, and Opt-in Plaintiffs for all payments made to them under this Settlement.

(h)     Collective Counsel and Defendants' Counsel shall have the right to review and audit the activities of the Claims Administrator at reasonable times and upon reasonable, written notice to the Claims Administrator and the other Party's Counsel.  Information obtained from any such audit will be held in confidence, except as may be necessary to seek relief from the Court.

## V.  **RELEASE OF CLAIMS**

41.     **Opt-in Plaintiffs' Released Claims:**  Upon signing and timely submitting the FLSA Opt-in Form and Release of Claims, the Opt-in Plaintiffs will release and forever discharge

You created this PDF from an application that is not licensed to print to novaPDF printer (http://www.novapdf.com)

Defendants, and any of the former and present predecessors, successors, parents, subsidiaries, franchisors, insurers, and affiliates of Cahaba Heights Plaza, LLC and United Pizza, Inc., whatever their current or former legal names or legal entity status, and each of their respective current and former owners, officers, directors, employees, partners, shareholders, attorneys, insurers, and agents, and any other successors, assigns, heirs, or legal representatives of the Defendants (the "Released Parties"), specifically including, but not limited to, Mohammed (David) Dawoud and his spouse and heirs, from any and all claims, rights, demands, liabilities, and causes of action of every nature and description, whether known or unknown, arising on or before April 15, 2019, through the date of preliminary approval of the Settlement (the "Release Period"), arising out of, based on, or encompassed by:  (a) the claims that were asserted in any civil complaint filed in the Action on behalf of any Settlement Collective Member; (b) claims that relate to or arise out of the reimbursement of vehicle or driving expenses, under-reimbursement of expenses, or failure to reimburse expenses of any kind; and (c) claims that relate to or arise out of the payment of the applicable minimum wage or overtime, under-payment of the applicable minimum wage or overtime, or failure to pay the applicable minimum wage or overtime, arising under the Fair Labor Standards Act (FLSA), the laws of the State of Alabama (including statutory and common or judge-made law), and/or any other similar federal, state, municipal, or local laws.  Without limiting the generality of the foregoing, the claim preclusion effect of this Settlement, and the judgment thereon, for *res judicata* purposes shall be co-extensive with this release of claims (collectively, the "Released Claims").

42.    **Release of Fees and Costs:**  Plaintiffs, on behalf of themselves and the Settlement Collective Members, hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that they have or may have against Defendants for attorneys' fees, costs, or expenses associated with this Settlement or the 2021 FLSA Lawsuit, including but not limited to those

18
SETTLEMENT AND RELEASE AGREEMENT

attorneys' fees, costs, or expenses associated with Collective Counsel's representation of the Plaintiff and Settlement Collective Members in this Action, and the representation by Plaintiffs by any other attorneys associated with the 2021 FLSA Lawsuit (including all attorneys of record) or this Settlement.  Plaintiffs further understand and agree that any fees and costs payment provided for herein will be the full, final, and complete payment of all attorneys' fees, costs, and expenses associated with Collective Counsel's representation of Plaintiffs and the Settlement Collective Members in this Settlement or the 2021 FLSA Lawsuit.

43.  **General Release by Collective Representatives:**

(a)  In exchange for the service payment described herein, the Collective Representatives agree to sign a Supplemental Settlement Agreement containing a General Release of claims in the form attached hereto as <u>Exhibit C</u>

(b)  The Parties agree that any refusal by the Court to approve of the General Release by Collective Representatives as set forth in this paragraph shall not be a basis for rendering the entire Settlement voidable or unenforceable.  The Parties further agree that the service payments are contingent upon the execution of the Supplemental Settlement Agreement and General Release.

## VI.  <u>ADDITIONAL PROVISIONS</u>

44.  **No Waiver of Arbitration Agreements:**  The Parties agree that, by entering into and seeking Court approval of this Agreement, Defendants in no way waive any rights to enforce arbitration agreements entered into between Defendants and Settlement Collective Members, including the waiver of class and collective action litigation, or to enforce similar agreements with other employees, and Plaintiffs do not waive defenses or arguments against the enforceability of such arbitration agreements.

45.  **Signatories:**

You created this PDF from an application that is not licensed to print to novaPDF printer (http://www.novapdf.com)

(a)     The respective signatories to the Settlement represent that he, she or they are fully authorized to enter into this Settlement and bind to its terms and conditions the respective entities for which the person is signing as shown on the signature line.  Each of the respective signatories further agree and represent that they are signing this Settlement voluntarily.

(b)     The Parties agree that because the Settlement Collective Members are so numerous, it is impossible or impractical to have each Settlement Collective Member execute this Settlement. The Notice will advise all Settlement Collective Members of the binding nature of the release if they become an Opt-in Plaintiff.   This Agreement shall have the same force and effect as if it were executed by each Settlement Collective Member.

46.     **Cooperation to Implement Settlement**:  The Parties agree to cooperate fully with each other to accomplish the terms of this Settlement, including but not limited to executing such documents and taking such other actions as may reasonably be necessary to implement the terms of the Settlement.  The Parties shall use their best efforts, including all efforts contemplated by this Settlement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate the terms of the Settlement.

47.     **Disputes**:     Any dispute between the Parties concerning the interpretation or implementation of this Agreement will be resolved by the Court.  Prior to any such resort to the Court, counsel for the Parties will confer in good faith to resolve the dispute.  If the Parties are unable to resolve the dispute themselves, the dispute will be submitted to the Court, unless the Parties agree otherwise.

48.     **No Prior Assignments**:  The Parties represent, covenant, and warrant that they have not directly or indirectly assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action, or right released and discharged in this Settlement.

20

SETTLEMENT AND RELEASE AGREEMENT

You created this PDF from an application that is not licensed to print to novaPDF printer (http://www.novapdf.com)

49.  **No Admission of Liability and Inadmissibility of Settlement**:

(a)  Defendants deny liability to Plaintiffs and the Settlement Collective for any claim or cause of action. Defendants have denied and continue to deny each of the claims and contentions alleged by Plaintiffs in the Action.  Defendants have repeatedly asserted and continue to assert defenses thereto, and have expressly denied and continue to deny any wrongdoing or legal liability arising out of any of the facts or conduct alleged in the Action.  Defendants also have denied and continue to deny the allegations that the Settlement Collective Members have suffered damage or that the Settlement Collective Members were harmed by the conduct alleged in the Action.  By entering into this Agreement, Defendants in no way admit to the suitability of this Action for collective action litigation other than for purposes of settlement.

(b)  Settlement of the Action and all acts performed or documents executed in furtherance of this Agreement or the settlement embodied herein:  (i) are not, shall not be deemed to be, and may not be used as an admission or evidence of any wrongdoing or liability on the part of Defendants, or of the truth of any of the factual allegations in any and all Complaints filed in the Action; (ii) are not, shall not be deemed to be, and may not be used as an admission or evidence of fault or omission on the part of Defendants in any civil, criminal, administrative or arbitral proceeding; and (iii) are not, shall not be deemed to be, and may not be used as an admission or evidence of the appropriateness of these or similar claims for collective action treatment other than for purposes of administering this Agreement.  The Parties understand and agree that this Agreement and any exhibit hereto are settlement documents and shall be inadmissible in any legal proceeding for any reason, except a proceeding to enforce the terms of this Agreement.

50.  **Fair, Adequate, and Reasonable Settlement**:  The Parties agree that the Settlement is fair, adequate, and reasonable, and will so represent it to the Court; provided, however, that

SETTLEMENT AND RELEASE AGREEMENT

You created this PDF from an application that is not licensed to print to novaPDF printer (http://www.novapdf.com)

nothing herein is intended to, and shall not be construed to, waive the confidentiality of the Parties'

settlement or settlement negotiations and discussions pursuant to the Federal Rules of Evidence.

51. **Waiver of Appeals:** The Parties agree to waive all appeals from the Court's final

approval of this Settlement, unless the Court materially modifies the Settlement; provided, however,

that Plaintiffs may appeal any reduction in the amount of Collective Counsel's fees and expenses

and/or the service payments to the Collective Representatives. Any reduction in the amount of

Collective Counsel's fees, Collective Counsel's expenses, and/or the service payments to the

Collective Representatives will not, however, constitute a material modification of the Settlement

and will not be grounds to void the Settlement.

52. **No Tax Advice:** Neither Collective Counsel nor Defendants' Counsel intend

anything contained in this Settlement to constitute advice regarding taxes or taxability, nor shall

anything in this Settlement be relied upon as such within the meaning of United States Treasury

Department Circular 230 (31 CFR Part 10, as amended) or otherwise.

53. **Collective Action Certification and Settlement Approval:**

(a) In connection with the request for approval of the Settlement, Plaintiffs shall seek an

order certifying the Settlement Collective for settlement purposes only under the FLSA. Defendants

are consenting to the certification of the Settlement Collective for settlement purposes only and

contend that collective action certification would not be appropriate if the Action were litigated.

(b) In the event: (i) the Court does not enter the Order specified herein; (ii) the Court

does not approve the Settlement as provided herein; (iii) the Court does not enter a Final Judgment

as provided herein, which becomes final as a result of the occurrence of the Effective Date; or (iv)

the Settlement does not become Final for any other reason, this Agreement shall be null and void and

any order or judgment entered by the Court in furtherance of this Settlement shall be treated as void

from the beginning. In such a case, any certified collective shall be decertified, the Parties shall be

SETTLEMENT AND RELEASE AGREEMENT

You created this PDF from an application that is not licensed to print to novaPDF printer (http://www.novapdf.com)

DocuSign Envelope ID: 86B26384-D69D-4B4B-90BD-9D36D9E5C3C2

returned to their respective statuses as of the date and time immediately prior to the execution of this Agreement, and the Parties shall proceed in all respects as if this Agreement had not been executed. In such case, the Settlement shall not be used or be admissible in any subsequent legal proceedings, either in this Action, with the Court or in any other Court or forum. In the event an appeal is filed from the Court's Final Judgment, or any other appellate review is sought prior to the Effective Date, administration of the Settlement shall be stayed pending final resolution of the appeal or other appellate review.

54. **Use of Confidential Documents and Information**: Plaintiffs and Collective Counsel agree to keep confidential all documents and information produced in the course of discovery and litigation of this Action, including settlement negotiations, and Plaintiffs agree to return any such documents to Collective Counsel. All documents and information produced in this Action, otherwise obtained in the course of the litigation of this Action or the 2021 FLSA Lawsuit, as well as all documents and information (including Settlement Collective Member contact information) produced in connection with effectuation of this Settlement, shall only be used for purposes directly related to the effectuation of this Settlement.

55. **Cooperation in Drafting**: The Parties agree that the terms and conditions of this Settlement are the result of lengthy, intensive, arm's-length negotiations between the Parties, and that this Settlement shall not be construed in favor of or against any Party by reason of the extent to which any Party, his, her, its, or their counsel participated in its drafting.

56. **Applicable Law**: All terms and conditions of this Agreement and its exhibits will be governed by and interpreted according to the laws of the State of Alabama, without giving effect to any conflict of law principles or choice of law principles.

SETTLEMENT AND RELEASE AGREEMENT

You created this PDF from an application that is not licensed to print to novaPDF printer (http://www.novapdf.com)

57. **Captions and Headings:** Captions, headings or titles in this Settlement are a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Settlement or any provision thereof.

58. **Modification or Amendment:** This Settlement may not be changed, altered, or modified, except in writing, and signed by the Parties, and approved by the Court. This Settlement may not be discharged except by performance in accordance with its terms or by a writing signed by the Parties.

59. **Integration Clause:** This Settlement contains the entire agreement between the Parties relating to the subject and resolution of the Action. All prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by a Party or such Party's legal counsel, are merged in this Agreement. No rights under this Agreement may be waived except in writing.

60. **Binding on Successors and Assigns:** This Settlement may be binding upon and inure to the benefit of the Parties and their respective heirs, trustee, executors, administrators, successors, and assigns.

61. **Counterparts:** This Agreement shall be executed in counterparts and executed signature pages may be exchanged by e-mail or facsimile, and when each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and when taken together with other signed counterparts, shall constitute one Settlement, which shall be binding upon and effective as to all Parties.

62. **Enforceability:** When this Agreement is signed by all Parties it shall be fully enforceable by the Court pursuant to any applicable provision of law.

63. **No Retaliation:** Defendants shall not retaliate in any way against Plaintiffs or any Settlement Collective Member for participating or opting-in to the Settlement.

You created this PDF from an application that is not licensed to print to novaPDF printer (http://www.novapdf.com)

64.  **No Waiver:**  Any waiver by any Party to require strict performance by the other Party of any of the terms or provisions of this Settlement shall not be deemed to operate as a waiver of, or estoppel with respect to, any subsequent or other failure of performance, and such Party, notwithstanding such failure, shall have the right thereafter to require specific performance of any of the terms or provisions of this Settlement.

(signature blocks on following page.)

SETTLEMENT AND RELEASE AGREEMENT

You created this PDF from an application that is not licensed to print to novaPDF printer (http://www.novapdf.com)

1   Agreed to and accepted:

2

3   Date: _____

4                                        Cahaba Heights Plaza, LLC
                                         [Print Name]: _____
5                                        Title: _____

6

7   Date: _____

8                                        United Pizza, Inc.
                                         [Print Name]: _____
9                                        Title: _____

10

11  Date: _____

12                                       Mohammed (David) Dawoud

13           6/30/2022              *Cody Beavers*

14  Date: _____

15                                       Cody Beavers

16           6/30/2022              *Dakota Shawn Jolly*

17  Date: _____

18                                       Dakota Shawn Jolly

19           6/30/2022              *Teela Holley*

20  Date: _____

21                                       Teela Holley

22

23

24

25

26

27

28

SETTLEMENT AND RELEASE AGREEMENT

You created this PDF from an application that is not licensed to print to novaPDF printer (http://www.novapdf.com)

Agreed to and accepted:

Date: 7/5/2022

_M. ⟍⟍ D ⟍_
Cahaba Heights Plaza, LLC
[Print Name]: Mohammed Dawoud
Title: President

Date: 7/5/2022

_Moh ⟍ D ⟍_
United Pizza, Inc.
[Print Name]: Mohammed Dawoud
Title: President

Date: 7/5/2022

_M. ⟍⟍ D ⟍_
Mohammed (David) Dawoud

Date: _____

_____
Cody Beavers

Date: _____

_____
Dakota Shawn Jolly

Date: _____

_____
Teela Holley

26

SETTLEMENT AND RELEASE AGREEMENT

# EXHIBIT "A"

# TO SETTLEMENT AGREEMENT

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

———————————————

**CODY BEAVERS, DAKOTA SHAWN
JOLLEY, and TEELA HOLLEY,** for
themselves and all others similarly situated,

Plaintiffs,

v.

**CAHABA HEIGHTS PLAZA, LLC,
UNITED PIZZA, INC., AND MOHAMMED
(DAVID) DAWOUD,**

Defendants.

Case No. _____

## FLSA OPT-IN FORM AND RELEASE OF CLAIMS

**You are receiving this form because you are a collective class member in the lawsuit listed above.  You must sign and return this form by _____  to receive your share of the FLSA settlement agreement reached in this case.**

**Instructions**:  If you want to participate in the settlement of this lawsuit, please complete this FLSA Opt-In Form and Release of Claims if you would like to claim your *pro rata* share of the settlement money allocated to claims under the federal Fair Labor Standards Act ("FLSA") in this case.  To assist you in getting your claim form postmarked by _____, a pre-printed return envelope has been enclosed for your convenience.  It is addressed to the Claims Administrator, _____.  Once you have signed and dated this claim form, please place it and the signed and dated W-9 form (blank copy enclosed with this form) in the pre-printed return envelope, add appropriate postage, and provide it to the U.S. Postal Service.

If you have lost or misplaced the pre-printed return envelope, you may mail your signed and dated claim form and W-9 form to the Claims Administrator by first-class mail at the following address, or send a copy by fax or email to:

[Claims Administrator
Address
Fax
Email]

PD.37690224.1

## CLAIM AND RELEASE FORM

Please print your current mailing address and telephone number below:

_____
_____
_____

(_____) _____
Telephone Number

Last 4 digits of your Social Security Number: _____

_____
City/State Where You Worked for Defendants
(for identification purposes only)

## FLSA CONSENT TO JOIN / OPT-IN TO THIS LAWSUIT:

By signing and submitting this Claim Form, I voluntarily consent to join in and participate in the settlement and release of FLSA claims in this lawsuit. I understand that I do not have to participate in the settlement in this lawsuit, but that I may not receive my *pro rata* share of the settlement funds or be bound by the release of claims unless I sign and timely submit this Claim Form.

## RELEASE AND SIGNATURE:

I have read the Notice that was sent to me with this Claim Form. I understand that by consenting to join in and participate in the settlement of FLSA claims in this case, I have agreed to and do release and forever discharge Defendants Cahaba Heights Plaza, LLC, and United Pizza, Inc. (the "Defendants"), and any of their former and present predecessors, successors, parents, subsidiaries, franchisors, insurers, and affiliates of Defendants, whatever their current or former legal names or legal entity status, and each of their respective current and former owners, officers, directors, employees, partners, shareholders, insurers, and agents, and any other successors, assigns, heirs, or legal representatives of the Defendants (the "Released Parties"), specifically including, but not limited to, Mohammed (David) Dawoud and his spouse and heirs, from any and all claims, rights, demands, liabilities, and causes of action of every nature and description, whether known or unknown, arising on or before the date of preliminary approval (the "Release Period"), arising out of, based on, or encompassed by: (a) the claims that were asserted in any civil complaint filed in this case on behalf of any Settlement Collective Member (as defined in the Notice accompanying this Claim Form); (b) claims that relate to or arise out of the reimbursement of vehicle or driving expenses, under-reimbursement of expenses, or failure to reimburse expenses of any kind; and (c) claims that relate to or arise out of the payment of the applicable minimum wage or overtime, under-payment of the applicable minimum wage or overtime, or failure to pay the applicable minimum wage or overtime, arising under the Fair Labor Standards Act (FLSA), the laws of the State of Alabama (including statutory and common

2

or judge-made law), and/or any other similar federal, state, municipal, or local laws (collectively, the "Released Claims").

**<u>DATE AND SIGNATURE</u>:**

Dated: _____, 2022

                                                                     _____

                                                                       Print Full Name

                                                                     _____

                                                                        Signature

3

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

—————————————

**CODY BEAVERS, DAKOTA SHAWN**
**JOLLEY, and TEELA HOLLEY,** for
themselves and all others similarly situated,

Plaintiffs,

v.

**CAHABA HEIGHTS PLAZA, LLC,**
**UNITED PIZZA, INC., AND MOHAMMED**
**(DAVID) DAWOUD,**

Defendants.

Case No. _____

## NOTICE OF COLLECTIVE ACTION SETTLEMENT

**PLEASE READ THIS ENTIRE NOTICE CAREFULLY. YOUR RIGHTS MAY BE**
**AFFECTED BY THE SETTLEMENT DESCRIBED IN THIS NOTICE.**

> **TO:   All persons who worked for Cahaba Heights Plaza,**
> **LLC, United Pizza, Inc., and/or Mohammed (David) Dawoud**
> **("Defendants") at their Domino's pizza stores in Dora,**
> **Alabama, or Hamilton, Alabama (store nos. 5395 and 5822) as**
> **delivery drivers at any time during the Release Period (as**
> **defined below).**

On _____, 2022 the Court granted approval of a settlement as set forth in a Settlement and Release Agreement ("Settlement Agreement").

The Collective Representatives and Collective Counsel (as defined below) believe the proposed settlement is fair, adequate, and reasonable and in the best interest of the Settlement Collective.  This Notice informs you of the settlement and its terms and your rights to participate in the settlement by timely and properly signing and submitting a FLSA Opt-in Form and Release of Claims.  This Notice also explains how you can obtain more information about the settlement.

## I.     SUMMARY OF THE LAWSUIT

Plaintiffs Cody Beavers, Dakota Shawn Jolly, and Teela Holley ("Plaintiffs") and Defendants, Cahaba Heights Plaza, LLC, United Pizza, Inc., and/or Mohammed (David) Dawoud ("Defendants"), are parties to *Cody Beavers, et al. v. Cahaba Heights Plaza, LLP, et al.*, Civil Action No.: _____ (the "Lawsuit"), which is pending in the United States District Court for the Northern District of Alabama (the "Court").  Plaintiffs' allegations include that

1

Defendants underpaid their delivery drivers ("drivers") by not reimbursing them a sufficient amount for their expenses associated with the use of their personal vehicles while delivering pizzas on behalf of Defendants.  Plaintiffs allege that this practice violated the Fair Labor Standards Act (FLSA) by failing to pay drivers proper minimum wages under the law.

Defendants have denied (and continue to deny) each and every allegation by Plaintiffs and contend that Plaintiffs and the members of the Settlement Collective were provided all compensation as required by law.  The attorneys for the parties hereto have conducted substantial informal discovery and informal investigation in connection with this Lawsuit and have researched the legal and factual issues relating to the claims and defenses that are contained in the Lawsuit.

The parties reached an agreement after mediation before a private FLSA collective action mediator.  The Court has preliminarily approved the Settlement Agreement.

## II.     COLLECTIVE ACTION DEFINITION

The Lawsuit is being settled as a collective action.  In a collective action, the Plaintiffs, also referred to as the Collective Representatives, sues on behalf of themselves and other persons with similar claims.

The Settlement Collective that the Court has certified, for settlement purposes only, under the FLSA is defined as follows:

> **All employees who have worked for Defendants as delivery drivers at their Domino's pizza stores (nos. 5395 and 5822) in Dora, Alabama, or Hamilton, Alabama at any time during the Release Period.**

The Release Period is defined as the period dating from April 15, 2019, through _____, 2022, the date the Court granted approval of the Settlement.

**The settlement will bind all members of the Settlement Collective who sign and timely submit a FLSA Opt-in Form and Release of Claims.**

## III.     COLLECTIVE REPRESENTATIVES AND COLLECTIVE COUNSEL

The Court has appointed Plaintiffs Cody Beavers, Dakota Shawn Jolly, and Teela Holley as Collective Representatives to represent the Settlement Collective.  The Court has appointed the following attorneys to represent the Settlement Collective as Collective Counsel:

C.  Ryan Morgan, Esq.
Jolie N. Pavlos, Esq.
Morgan & Morgan, P.A.
20 North Orange Avenue, Suite 1400
Orlando, Florida  32801
(407) 418 2069
rmorgan@forthepeople.com

## IV.     SETTLEMENT AMOUNT

The settlement obligates Defendants to pay up to a potential maximum settlement amount (referred to in the Settlement Agreement as the "Maximum Settlement Amount") of One Hundred Fifty Thousand and No/100 Dollars ($150,000.00).  This Maximum Settlement Amount is "all inclusive."  It includes, but is not limited to:  alleged unpaid expense pay, any and all associated penalties, interest, costs, attorneys' fees, claim administration costs, service awards to the Collective Representatives, and all other settlement-related payments and costs.

Under no condition will Defendants' liability for payments to Settlement Collective Members exceed Eight-Eight Thousand and No/100 Dollars ($88,000.00), the "Net Settlement Amount".  All settlement checks cashed or otherwise negotiated by members of the Settlement Collective who sign and timely submit a FLSA Opt-in Form and Release of Claims shall be paid out of the Net Settlement Amount.

## V.     SETTLEMENT ADMINISTRATOR

The settlement process will be administered by [insert claims administrator], an experienced collective action claims administrator.  The costs and expenses of the Claims Administrator shall be capped at $8,500.00, to be paid from the Maximum Settlement Amount.

## VI.     RELEASE AND WAIVER

If you wish to claim your share of the Net Settlement Amount through the process described below in Section X by signing and timely submitting the attached FLSA Opt-in Form and Release of Claims, then you shall be bound by the following release:

Upon signing and timely submitting the FLSA Opt-in Form and Release of Claims, the Opt-in Plaintiffs will release and forever discharge Defendants, and any of the former and present predecessors, successors, parents, subsidiaries, franchisors, insurers, and affiliates of Cahaba Heights Plaza, LLC and United Pizza, Inc., whatever their current or former legal names or legal entity status, and each of their respective current and former owners, officers, directors, employees, partners, shareholders, attorneys, insurers, and agents, and any other successors, assigns, heirs, or legal representatives of the Defendants (the "Released Parties"), specifically including, but not limited to, Mohammed (David) Dawoud and his spouse and heirs, from any and all claims, rights, demands, liabilities, and causes of action of every nature and description, whether known or unknown, arising on or before April 15, 2019, through the date of the Court's preliminary approval of the settlement in this case (the "Release Period"), arising out of, based on, or encompassed by:  (a) the claims that were asserted in any civil complaint filed in this case on behalf of any Settlement Collective Member; (b) claims that relate to or arise out of the reimbursement of vehicle or driving expenses, under-reimbursement of expenses, or failure to reimburse expenses of any kind; and (c) claims that relate to or arise out of the payment of the applicable minimum wage or overtime, under-payment of the applicable minimum wage or overtime, or failure to pay the applicable minimum wage or overtime, arising under the Fair Labor Standards Act (FLSA), the laws of the State of Alabama (including

statutory and common or judge-made law), and/or any other similar federal, state, municipal, or local laws (collectively, the "Released Claims").

## VII.   ATTORNEYS' FEES AND COSTS

It is customary for courts to award to collective counsel attorneys' fees based upon a percentage of the potential maximum settlement amount for the benefit of a class.  In this case, Collective Counsel was awarded fees and costs in an amount not to exceed 33.33% of the Maximum Settlement Amount, or $50,000.00, to be paid from the Maximum Settlement Amount (the "Attorney Fee/Cost Award").

## VIII.   SERVICE AWARDS

Plaintiffs will receive service awards in the total, collective amount of $3,500.00 for performing services in assisting with this Lawsuit, to be paid from the Maximum Settlement Amount (the "Service Awards").  The Service Awards are in addition to the payment to the Plaintiffs of their share of the settlement as a member of the Settlement Collective and compensates them for the time, effort, and risk in pursuing this Lawsuit on behalf of the Settlement Collective.  In additional consideration for these payments, the Plaintiffs have agreed to a separate general release in favor of Defendants.

## IX.   CALCULATION OF PAYMENTS

The total amount of the Settlement Payments available for distribution to the Settlement Collective equals the Maximum Settlement Amount minus the total of (i) the Attorney Fee/Cost Award, (ii) the Service Award, and (iii) the maximum cost and expenses of the Claims Administrator, not to exceed $88,000.00 ("Net Settlement Amount").

Calculation of Settlement Payments:  Each Settlement Collective Member's Settlement Payment was calculated in the following manner:

     a.    For each Settlement Collective Member, the total number of his or her recorded miles driven for Defendants during the Release Period shall be his/her "Individual Miles." The aggregate of all Individual Miles among all Settlement Collective Members shall be the "Collective's Miles."

     b.    Each Settlement Collective Member's Individual Miles shall be divided by the Collective's Miles to obtain his/her "Payment Ratio."

     c.    Each Settlement Collective Member's Payment Ratio shall be multiplied by the Net Settlement Amount to arrive at his/her Settlement Payment, which shall be a minimum of $30.00.

Confidentiality:  If you sign and timely return the FLSA Opt-in Form and Release of Claims, you agree to and will be required to keep your individualized settlement amount strictly confidential, and shall not discuss, refer, to or communicate it to third parties or any other person or entity, or in any way publicize, disclose, distribute, discuss or disseminate your individualized settlement amount, including, but not limited to, through social media.

4

Taxes:  Settlement Payments will be treated as an expense reimbursement, so no taxes will be deducted.  Opt-in-Plaintiffs who cash or otherwise negotiate their settlement check will be responsible for reporting and paying any federal, state, and/or local taxes that may be due on these payments.

Payment of Settlement Funds Will Not Be Considered By Defendants As Having Any Effect on Any Employee Benefit Plan and Similar Plans:  The payment to any member of the Settlement Collective as provided for in this Settlement shall not be considered by Defendants to form the basis for additional contributions to, additional benefits under, or any other additional entitlements under any employee benefit plan, employment policy, or stock option plan of or sponsored by Defendants or any of their present or former parent corporations or affiliates or any jointly trusteed benefit plans.

## X.    CLAIM SUBMISSION PROCESS

**To claim your Settlement Payment, you must sign and return the attached FLSA Opt-in Form and Release of Claims and the attached W-9 Form to the Claims Administrator by the date indicated on the FLSA Opt-in Form and Release of Claims, which is forty-five (45) days from the date it was mailed to you.  If you do so, you voluntarily agree to join the Lawsuit, become an Opt-In Plaintiff, and are bound by the release provision set forth above and in the FLSA Opt-in Form and Release of Claims.**  You must thereafter cash or otherwise negotiate your settlement check within **180 days following issuance** of the settlement check, after which time the settlement check will become stale and expire.

If you do not sign and timely return the FLSA Opt-in Form and Release of Claims and W-9, you will <u>not</u> receive any share of the settlement and you will retain all rights and claims that you may have against Defendants.  You should be aware that if you do not join this Lawsuit and later decide to bring a separate lawsuit against Defendants, the time for bringing such a claim may expire and you may receive nothing or less than you would have received if you had cashed the settlement check you received under the Settlement Agreement in this case.

## XI.    SUMMARY OF OPTIONS

As a member of the Settlement Collective, you have the following options:

1.    **Complete and Return a FLSA Opt-in Form and Release of Claims.**   If you sign and return the FLSA Opt-in Form and Release of Claims and W-9 by the above deadline, you agree to join the Lawsuit and to become an Opt-In Plaintiff, you will be bound by the Settlement Agreement, and you will give up the claims that are released by the Settlement Agreement.

2.    **Decide Not to Complete and Return a FLSA Opt-in Form and Release of Claims or Cash or Otherwise Negotiate Your Settlement Check.**  You are entitled to exclude yourself from the Settlement Agreement by deciding not to sign and return the FLSA Opt-in Form and Release of Claims and W-9 by the above deadline.  If you exclude yourself from the Settlement Agreement, you will not receive any cash payment or any other benefits from the

5

settlement.  You will retain the right to bring all of the claims that will be released by Opt-In Plaintiffs as part of the Settlement.

## XII.    ADDITIONAL INFORMATION

For more detailed information concerning the matters involved in the Lawsuit, please refer to the pleadings, the Orders entered in the Lawsuit, and to the other papers filed in the Lawsuit, which may be inspected at the Office of the Clerk of the U.S. District Court for the Northern District of Alabama during regular business hours.

Any questions concerning the matters contained in this Notice may be directed to Collective Counsel (at the address set forth above in Section III of this Notice).  You may also seek the advice and counsel of your own attorney, at your own expense, if you desire.

**Do Not Call or Write the Court to Obtain Copies of Documents
Or To Ask Questions About The Settlement.**

6